FRIES v MAVRICK METAL STAMPING, INC

Docket No. 283193. Submitted May 14, 2009, at Petoskey. Decided
    October 13, 2009, at 9:00 a.m.

    Kristi Fries brought an action in the Antrim Circuit Court against
        Mavrick Metal Stamping, Inc., and others, seeking damages for
        injuries sustained when her arms were caught in an automatic
        stamping press that she was operating during the course of her
        employment at Mavrick. The machine cycled unexpectedly when
        her clothing triggered the finger-controlled light sensors that
        actuate the press. Fries alleged that Mavrick knew that the press
        was dangerously defective and would cycle without warning and
        willfully and intentionally disregarded this known danger. Fries
        alleged that Mavrick was liable for damages under the intentional
        tort exception to the exclusive remedy provision of the Worker's
        Disability Compensation Act, MCL 418.131(1). The defendants
        sought summary disposition, alleging that the facts did not show
        the existence of an intentional tort. The court, Philip E. Rodgers,
        Jr., J., denied the motion, holding that Fries had presented
        sufficient evidence that Mavrick had actual knowledge of the
        continuously operative dangerous condition presented by the
        press. Mavrick appealed by leave granted.

        The Court of Appeals *held*:

        1. A jury could reasonably conclude from the evidence that
    Mavrick's supervisors knew that an injury would follow from the
    operation of the completely unguarded press that had a demon-
    strated history of inadvertent, unintended activation. The evi-
    dence showed a genuine issue of material fact regarding Mavrick's
    actual knowledge of the dangers posed by the unguarded controls.

        2. The facts alleged by Fries and the evidence in the record
    would allow a reasonable jury to conclude that when an employee
    wearing loose clothing operated the press an injury was certain to
    occur. The evidence established that Mavrick made no effort to
    prevent a second clothing-initiated cycling event by installing
    available safety equipment after an earlier cycling event had been
    reported and failed to warn Fries, a new user of the press, that
    loose clothing would activate the press. The trial court properly
    determined that a jury question existed regarding whether the

danger presented by the operation of the press constituted a continuously operative dangerous condition from which the jury could conclude that Mavrick had knowledge that an injury was certain to occur. The circuit court properly determined that a reasonable jury could conclude that Mavrick knew that an injury was certain to occur and willfully disregarded this knowledge.

Affirmed.

WORKERS' COMPENSATION — INTENTIONAL TORT EXCEPTION — CONTINUOUSLY OPERATIVE DANGEROUS CONDITIONS.

An intentional tort is the only exception to the exclusive remedy provided by the Worker's Disability Compensation Act; an intentional tort exists only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury; an employer intended an injury if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge; an employer may be found to have had knowledge that an injury was certain to occur where the employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury yet refrains from informing the employee about the condition so that the employee is unable to take the steps to prevent injury (MCL 418.131[1]).

*Gruel Mills Nims & Pylman LLP* (by *J. Paul Janes*), for plaintiff.

*Running Wise & Ford, PLC* (by *Michael J. Corcoran* and *Michael I. Conlon*), for Mavrick Metal Stamping, Inc.

Before: WHITBECK, P.J., and DAVIS and GLEICHER, JJ.

GLEICHER, J. In this action seeking recovery for an intentional tort falling outside the exclusive remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.131(1), defendant Mavrick Metal Stamping, Inc., appeals by leave granted the circuit court's order denying its motion for summary disposition. We affirm.

I. FACTS AND PROCEEDINGS

Mavrick manufactures automotive parts, and employed plaintiff Kristi Fries in its production department. On November 5, 2003, Mavrick assigned Fries to operate an automatic stamping press referred to as the OBI-11. That day, Fries wore a t-shirt under a long-sleeved shirt and a hooded zip-up sweatshirt. At some point during her shift, Fries reached into the die area of the OBI-11 to remove some stamped parts. Her loose clothing triggered the OBI-11's finger-controlled light sensors, which actuated the machine. The press cycled before Fries could withdraw her hands, and traumatically amputated both of Fries's arms between the wrists and elbows.

Fries's amended complaint alleged that Mavrick knew that the OBI-11 "was dangerously defective and would actuate without warning due to unguarded controls that were positioned at an unsafe distance to the cycling press." The amended complaint further asserted that Mavrick's "willful and intentional disregard of the known danger" associated with the press subjected it to liability under the intentional tort exception to the WDCA's exclusive remedy provision.

At Fries's deposition, she summarized the operation of the OBI-11 as follows: "Take the part, take the part from the bin. You have two different bins. Take one from each bin. Set it into the press. Hit the buttons. The press will come down, back up, you take the parts out." Fries and other Mavrick employees recalled that to cycle the OBI-11, an operator would simultaneously touch two button control pads located on a waist-high pedestal approximately 10 inches from the press. The presence of two fingers on the pads interrupted a light sensor beam and activated the OBI-11's operation. Mike Kucka, a former Mavrick press operator, re-

counted that two years before Fries's accident, the OBI-11 unexpectedly cycled when his loose clothing interrupted the control buttons' light sensors. Kucka described that although his unzipped shirt had tripped the light sensors and activated the machine, he escaped injury because his hands had remained outside the die area. Kucka reported this event to Larry Hague, then supervisor of Mavrick's maintenance crew, who replied that he could do nothing because Mavrick did not own the press. Kucka recalled that he had also advised Jason Olds, Fries's supervisor, about the inadvertent press cycling. After his experience with the OBI-11's unexpected activation, Kucka always buttoned his clothing behind his back. Fries testified that she had not operated the OBI-11 before the date of her accident, and had not received any warning concerning the risk of wearing loose clothing while running the machine.

Russ Willoughby, Mavrick's maintenance manager, admitted that the OBI-11 had no safety "pull-backs" designed to move the operator's hands away from the point of operation when the press cycled. Willoughby averred that pull-back devices "are routinely used at Mavrick," but conceded that the OBI-11 was "the only light-activated, sensory-controlled machine at Mavrick that did not have pull-backs." Olds explained that in contrast with the OBI-11's finger-touch control buttons, all other OBI presses at Mavrick activated by depressing dual palm buttons located above the operator's head or below the die working area. When asked, "Was there any safety guarding to prevent the operator's hand from being in the point of operation" on the OBI-11, Olds responded, "No."

The record also revealed that the OBI-11 lacked safety guarding of the finger control buttons. Gerald Rennell, a safety engineering expert witness for Fries,

averred in an affidavit that the manufacturer of the OBI-11's "Opto-Touch" finger control buttons offered safety guards that the manufacturer described as "field covers . . . designed to prevent accidental activation by *loose clothing*" that potentially could block the sensing beams. (Emphasis in original.) Paul Mullens, Mavrick's owner, acknowledged awareness with respect to the availability of safety guards for the OBI-11. John Bodnar, who investigated Fries's accident for the Michigan Occupational Safety and Health Administration, testified as follows regarding the finger control guards mentioned by Rennell:

> *Q.* . . . So the company itself had in its possession OPTi sensors that had bridge guards in the maintenance office, but instead of putting them on this machine, they were in the maintenance office?
>
> *A.* According to my inspection, yes.

Bodnar also found that the pedestal housing the control buttons had not been set at a safe distance from the point of press operation, which allowed Fries to contact the point of operation with her hands at the same moment that her clothes interrupted the finger pad light sensors. Bodnar affirmed that this created "a condition where . . . a worker could simultaneously have hands at point of operation in direct proximity of the control[.]"

Mavrick sought summary disposition pursuant to MCR 2.116(C)(8) and (10), arguing that as a matter of law the WDCA's exclusive remedy provision barred Fries's action. In a bench opinion, the circuit court ruled that Fries's amended complaint "sufficiently plead[ed]" an intentional tort claim that "surviv[ed] the (C)(8) challenge." The circuit court also denied Mavrick's motion under MCR 2.116(C)(10), reasoning as follows:

Here, to show an intentional tort the employer has to have actual knowledge of a certain injury and willfully disregard it. Now actual knowledge can be inferred, but the inference of actual knowledge comes from allowing someone to continue to work in what has been recognized to be a continuously dangerous condition, with no effort at cure, with no warning and where injury may be certain to occur.

There are . . . some factual disputes in this case. The issues raised here today are whether as a matter of law those are sufficient factual disputes to allow this case to go to a jury. Assumed most favorably from the Plaintiff's point of view, we have a machine upon which she has never worked, to which she is assigned to work that day by a production supervisor named Jason Olds. Mr. Olds provides her with no meaningful training and most importantly for this motion, no warnings with respect to the particular safety deficiencies with regard to this press.

Viewed most favorably from the Plaintiff's point of view, Mr. Ols [sic] has been warned by the regular operator of the press, Mr. Kucha [sic], that this press will double cycle if the . . . light beam is broken by something like a loose shirt or a loose jacket. Given the nature of the shop, the temperatures of the shop, it seems that it's fairly common for workers to have a [sic] extra jacket or shirt on and often unbuttoned. So the nature of the trigger for this safety issue is certainly common in the workplace or could reasonably [sic] inferred by a jury to be common in the workplace.

The machine itself, the Court presumes for purposes of this motion, is capable of being operated in a safe manner. In fact, for purposes of this motion, it's acknowledged that the actual guards necessary to make its safety apparent are at the workplace in the maintenance area and for reasons that are lost to time and memory, have simply never been installed.

So we have a press that can be triggered inadvertently and unintentionally by breaking the light beam as one would lean into it with a loose shirt. And due to the nature of the machine and the time period in which it recycles,

place the worker in a position where it would be impossible to remove their hands quickly enough. And it is this modality that created the double loss that Plaintiff has suffered.

How is it then that this could be certain to occur if the only prior occasion where it happened there was no injury? Well fortunately, Mr. Kucha [sic] managed to trigger this at a time where his hands weren't sufficiently in the press that he was caught. But quite frankly, if Mr. Ols [sic] is management, which he is for purpose of this motion, and if he's been told of this problem, which he has been for purposes of the motion, then it is only a question of time for an uninformed and untrained worker will be needlessly and certainly injured by the failure to take reasonable protective measures that were always available to prevent the injury.

What we do have is indeed a continuously operative dangerous condition, knowledge of which is inferred— actual knowledge of which is inferred to the employer who allows workers to operate it without warning and with making no effort to cure the defect with the certainty of injury to follow. And injury did in fact ultimately occur.

If these factual issues are resolved in favor of the Plaintiff, then a jury . . . could reasonably infer actual knowledge and return an award to the Plaintiff.

## II. ANALYSIS

Mavrick now challenges the circuit court's summary disposition ruling under MCR 2.116(C)(10). This Court reviews de novo a circuit court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). We also review de novo the interpretation and application of statutes as questions of law. *Gilliam v Hi-Temp Products, Inc*, 260 Mich App 98, 108; 677 NW2d 856 (2003). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party

is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App 621. When the record leaves open an issue on which reasonable minds could differ, a genuine issue of material fact exists that precludes summary disposition. *West*, 469 Mich 183.

The intentional tort exception to the WDCA's exclusive remedy provision sets forth, in pertinent part:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

An employer's intentional conduct "is the requisite standard triggering the exception to the [WDCA] exclusivity provision." *Gray v Morley (After Remand)*, 460 Mich 738, 742; 596 NW2d 922 (1999). "[W]hether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law . . . ." *Id.* at 743. In *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 173 (opinion by BOYLE, J.), 191 (opinion by RILEY, J., concurring in part and dissenting in part); 551 NW2d 132 (1996), our Supreme Court explained that the language of MCL 418.131(1) reflects "a legislative recognition of a limited class of cases in which liability is possible despite the absence of a classic intentional tort . . . ."

Mavrick first maintains that no evidence supports that it possessed knowledge that the OBI-11 had a defect or that Fries's injury was "certain to occur." According to Mavrick, because no one had ever sustained injury while operating the OBI-11, its supervisory employees lacked any knowledge that an injury would occur. Mavrick further avers that Kucka's report to Hague and Olds created only "a mere suspicion of knowledge," not "actual" knowledge. In *Travis*, the Supreme Court held that "[a] plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Travis*, 453 Mich 173-174 (opinion by BOYLE, J.). Viewed in the light most favorable to Fries, the record evidence substantiates that Kucka advised two Mavrick supervisors, Hague and Olds, that the OBI-11 cycled unexpectedly when his unzipped jacket interrupted the nearby light beam and actuated the press. Although Kucka escaped injury, Mullens acknowledged awareness that an injury would follow from unintended cycling of an unguarded press:

> *Q.* [T]hat's the purpose of a light curtain and a pullback, is so that the operator's hands are not at the point of operation during a cycle?
>
> *A.* In general that is considered the purpose, as are guards to prevent you from getting in there, screening, all kinds of other ways to try and make sure that people aren't hurt.

The record also establishes that Olds possessed actual knowledge that unlike the other presses at Mavrick, the OBI-11 lacked any form of safety guarding. On the basis of this evidence, a jury could reasonably conclude that Olds and the other Mavrick supervisors knew that an

injury would follow from the operation of this completely unguarded press with a demonstrated history of inadvertent, unintended activation. Kucka's reports and the other evidence gives rise to a genuine issue of material fact with regard to Mavrick's actual knowledge of the dangers posed by the unguarded OBI-11 finger controls.

Mavrick next challenges the circuit court's ruling that an injury caused by unanticipated action of the OBI-11 was "certain to occur." The Supreme Court in *Travis* specifically approved one variety of circumstantial evidence as satisfying the "certainty" requirement contained in MCL 418.131(1), which it described as a "continually operative dangerous condition":

> When an employer subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the dangerous condition so that he is unable to take steps to keep from being injured, a factfinder may conclude that the employer had knowledge that an injury is certain to occur. [*Travis*, 453 Mich 178 (opinion by BOYLE, J.).]

A companion case of *Travis*, *Golec v Metal Exch Corp*, supplied the facts invoked by the Supreme Court when it determined that a "continually operative dangerous condition" may give rise to circumstantial evidence of intentional tort liability. *Travis*, 453 Mich 183-187, 189-191 (opinion by BOYLE, J.), 198-199 (opinion by LEVIN, J., concurring in part and dissenting in part). In *Golec*, the defendant employer required the plaintiff to use a front-end loader to load wet scrap containing aerosol containers into a furnace. The front-end loader lacked a protective shield. *Id.* at 157-158 (opinion by BOYLE, J.). The plaintiff alleged that the defendant knew that wet scrap and aerosolized cans presented an explosion hazard. *Id.* at 158. At one point during his shift, the

plaintiff sustained a small burn caused by a minor explosion of the scrap. *Id.* The plaintiff's shift leader notified his supervisor of the injury, and the supervisor instructed the plaintiff to return to work. *Id.* at 158-159. Subsequently, a huge explosion resulted in the plaintiff's suffering severe burns. *Id.* at 159.

The Supreme Court held that the facts alleged by the plaintiff in *Golec* gave rise to a material question of fact with respect to whether the defendant committed an intentional tort. *Travis*, 453 Mich 184-185 (opinion by BOYLE, J.), 198-199 (opinion by LEVIN, J., concurring in part and dissenting in part). Concerning the injury's certainty to occur, the Supreme Court explained that the absence of an earlier large explosion, or additional smaller explosions, did not eliminate the certainty that an injury would occur, reasoning as follows:

> Plaintiff does not contend that every load of scrap would have exploded, but that every load of scrap had the potential to explode because each load could have contained a closed aerosol can or water. If the facts as alleged by plaintiff are established at trial, then plaintiff has proved the existence of a continually operative dangerous condition. Accordingly, we conclude that a genuine issue of material fact is presented regarding whether the injury was certain to occur. [*Id.* at 186 (opinion by BOYLE, J.).]

The Supreme Court also determined that sufficient facts supported that the defendant employer willfully disregarded that an injury was certain to occur, citing the supervisor's instruction to return to work "in the face of a condition that had already led to one, albeit minor, explosion." *Id.* at 187.

In this case, the facts alleged by plaintiff and contained in the record comprise evidence from which a reasonable jury could conclude that when an employee wearing loose clothing operated the unguarded OBI-11,

an injury was certain to occur. As with the dangerous work environment described in *Golec*, every encounter here between a worker's loose clothing and the OBI-11's finger control buttons inherently embodied the potential for inadvertent, unexpected cycling of the machine. Abundant and unrefuted evidence established that Mavrick made no effort to prevent another clothing-initiated cycling event by installing available safety equipment, and failed to warn Fries, a new user of the OBI-11, that loose clothing would actuate the press. These facts are readily distinguishable from those presented in *Travis*, where a press double cycled "only intermittently," was adjusted to prevent double cycling, and cycled so slowly that "[a]ll prior operators were able to withdraw their hands in time." *Travis*, 453 Mich 182. A jury could reasonably conclude in.this case that the OBI-11 would cycle whenever loose clothing interrupted the control buttons' light signal, and that the short distance between the buttons and the point of operation rendered it certain that a worker wearing a loose garment would suffer injury while reaching into the die area to retrieve a stamped part. Given this evidence, the circuit court properly determined that a jury question exists regarding whether the danger presented by operation of the OBI-11 constituted a continuously operative dangerous condition.

Mavrick further asserts that the record evidence fails to demonstrate that it "willfully disregarded" actual knowledge that an injury certainly would occur. According to Mavrick, "[a]t best" the evidence "only shows Defendant's knowledge of a defective condition in the OBI-11 Press that could foreseeably have resulted in injury at some point in time. The facts clearly do not rise to the level of a case in which the exclusive remedy provision should be avoided." In *Golec*, 453 Mich 186, the Supreme Court held that in light of the employer's

knowledge that an earlier explosion of scrap caused by dangerous conditions remained uncorrected at the time of the plaintiff's injury, the facts created a genuine issue of material fact concerning whether the employer had willfully disregarded that an injury certainly would occur. The Supreme Court explained that the testimony presented a question of fact with respect to whether the plaintiff's supervisor had ordered the plaintiff back to work "in the face of a condition that had already led to one, albeit minor, explosion." *Id.* at 187.

We agree with the circuit court's determination that a reasonable jury could conclude that Mavrick knew an injury was certain to occur through use of the OBI-11 press and willfully disregarded this knowledge. As with the dangerous work environment described in *Golec*, here every encounter between a loosely clothed press operator and the OBI-11 inherently embodied the potential for serious injury, particularly in light of Mavrick's failure to guard the control buttons or incorporate pull-backs in the machine's operation. Given the information supplied by Kucka and the fact that he regularly operated the OBI-11 wearing clothes buttoned behind his back, and the other evidence of record that Mavrick failed to install field covers for the OBI-11's finger control buttons, which it instead stored in the maintenance office, we conclude that plaintiff introduced sufficient evidence establishing that a serious injury was inevitable when an unwarned worker used the press and that Mavrick willfully disregarded and ignored its actual knowledge of the inevitability of injury.

Affirmed.