# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID J MCQUEER,

   Plaintiff-Appellant,

v

PERFECT FENCE COMPANY,

   Defendant-Appellee.

UNPUBLISHED
April 19, 2016

No. 325619
Grand Traverse Circuit Court
LC No. 2014-030287-NO

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

Plaintiff David McQueer appeals as of right from the trial court's order granting defendant Perfect Fence Company's motion for summary disposition and denying his motion to amend his complaint to add a claim for intentional tort and for breach of contract. For the reasons stated in this opinion, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

On January 14, 2014, while working for Perfect Fence Company, plaintiff was struck in the head by the bucket of a Bobcat. Plaintiff explained that as part of his job, he had to install fence posts with his supervisor Mike Peterson and Raymond Hauser, a coworker.[1] Plaintiff testified that, using different methods, they had installed more than ten posts before the accident. According to both plaintiff and Robert Krumm, one of defendant's owners, the proper way to install the posts was to use an auger or hand-digger to dig the holes for the posts. However, according to plaintiff, his supervisor Peterson had an "easier" method that involved using the bucket of a Bobcat to push down on the fence posts in order to get them in the ground.

According to plaintiff, they had used the Bobcat method before and Krumm had found out about it. He stated that Krumm was "pissed" that Peterson was "even doing something like that" and that he told Peterson not to do it. Plaintiff testified that Krumm stated something like, "That's dangerous as hell, you guys better not do that" and "You guys don't do that no more like

---

[1] The parties presented conflicting evidence with regard to whether Peterson was, in fact, plaintiff's supervisor.

-1-

that." Krumm, however, testified that before the accident he did not know that his employees were using the Bobcat method.

Plaintiff testified that although Krumm told Peterson not do it again, Peterson was the supervisor, so he had to do what Peterson wanted. Plaintiff added that, although he could have walked away, there would have been repercussions, and he noted that "you just do what you got to do when you're on the job."

Plaintiff testified that at the time of the accident, he was sitting under the bucket of the Bobcat without a hard hat. Plaintiff testified that while operating the Bobcat, Peterson "over-calculated it" so "when he brought the bucket down it hit a water pocket or something and that's when it came all the way down" and "hit me on the top of the head." He explained that the post went further down than anyone anticipated.[2]

Plaintiff was taken to the hospital by Peterson and testified that on the way, Peterson told him not to tell anyone at the hospital that he was injured while working for defendant because plaintiff was "not on the books" and there was no worker's compensation for him.[3] According to plaintiff, after he was released from the hospital, Krumm and Barbara McCullen, defendant's accountant, visited him in his home. Plaintiff testified that Krumm and McCullen told him that he was not covered by worker's compensation insurance and they attempted to get him to sign backdated documents indicating that he was an employee at the time of the accident. He stated that when he refused, defendant stopped providing him with weekly checks to help him cover his bills.[4] According to McCullen, however, plaintiff was told that he was covered by worker's compensation.

On April 10, 2014, plaintiff filed a complaint, alleging that defendant was negligent for failing to obtain worker's compensation insurance, for failing to supervise and train plaintiff's coworkers, for directing employees to grind metal fence posts without safety glasses, for directing employees to "drive metal fence posts into frozen ground using a Bobcat bucket," and for failing to provide safety equipment.[5] Defendant moved for summary disposition, arguing that it had a worker's compensation insurance policy with Accident Fund, so the exclusive remedy provision of the worker's disability compensation act (WDCA), MCL 418.131, barred plaintiff's tort claims.

---

[2] According to Krumm, Peterson did not recall what happened.

[3] There was conflicting evidence regarding whether it was defendant or plaintiff who insisted that plaintiff be paid "off the books."

[4] Krumm disputed plaintiff's account of the meeting, asserting that plaintiff was never told that there was no worker's compensation insurance for him. Further, defendant asserted that the checks to plaintiff stopped after he asked to continue receiving a $350 check once a week for two years so that he could "get back on his feet."

[5] The validity of the underlying claims is not an issue on appeal.

The record reflects that defendant had maintained a workers disability compensation insurance policy with Accident Fund since 2007, and the policy was in effect on the date of plaintiff's accident. Part One of the policy applied to worker's compensation insurance, and Part Two applied to general liability insurance.[6] Additionally, defendant's insurance policy provided defendant would pay an estimated premium that would be adjusted following an audit. An audit was coincidentally conducted on January 15, 2014—the day after plaintiff's accident. The audit covered the period from December 3, 2012 to December 3, 2013. It indicated that during that period there were an average of nine employees, but that no sub-laborers were employed. Plaintiff was not listed as an employee, even though he had been employed by defendant since June 2013. McCullen testified that she provided plaintiff's employment information to the auditor, who then failed to properly list plaintiff as a subcontractor.

On October 31, 2014, in opposition to defendant's motion for summary disposition, plaintiff asserted that his claim was not barred because defendant had violated MCL 418.611 when it failed to procure worker's compensation insurance that applied to plaintiff, which meant that pursuant to MCL 418.641(2), the exclusive remedy provision did not apply.

On November 6, 2014, plaintiff also filed a motion to amend his complaint to add a claim for intentional tort under MCL 418.131(1), another theory by which he could avoid the exclusive remedy provision. He also sought to add a breach of contract claim for damages arising from defendant's decision to employ him "off the books," which according to plaintiff resulted in economic damages totaling somewhere between $2,500 and $4,000.[7]

The trial court held oral argument on November 7, 2014. The court ordered supplemental briefing because it was concerned with whether Accident Fund was required to pay worker's compensation benefits or whether it was merely paying benefits to plaintiff in order to avoid greater liability as defendant's general liability insurer. Following the supplemental briefing, the trial court concluded that the exclusive remedy provision applied. The court found that even taking the facts in the light most favorable to plaintiff—i.e., that defendant failed to disclose plaintiff and his salary to Accident Fund in order to avoid paying a premium on him—Accident Fund issued defendant an insurance policy in accordance with MCL 418.611 and the plain language of MCL 418.621(2) required that policy to cover all defendant's employees, including undisclosed employees like plaintiff. The court also concluded that MCL 418.171(4) was not triggered in this case because defendant did not hire a contractor whose employees were not covered by a worker's compensation policy. Further, the court found that even if MCL 418.171 was triggered, the purpose of defendant's deception was to avoid paying a premium, not to avoid providing worker's compensation insurance.

---

[6] Plaintiff's attorney submitted an affidavit, averring that two Accident Fund employees told him that plaintiff was being paid pursuant to the general employer liability provision of the policy.

[7] The essence of the claim was that defendant had entered an implied contract with plaintiff whereby plaintiff would work for defendant and defendant would pay and process his wages in accordance with applicable laws, including withholding taxes, making disclosures regarding plaintiff's employment status, and making Social Security and Medicare contributions.

The trial court also denied plaintiff's motion to amend, concluding that the intentional tort claim was futile because plaintiff's injury was not certain to occur and concluding that, standing alone, the damages on the breach of contract claim were insufficient to reach the jurisdictional minimum of circuit court. This appeal follows.

## II. MOTION FOR SUMMARY DISPOSITION

Plaintiff first argues that the trial court erred in granting defendant's motion for summary disposition because the exclusive remedy provision in MCL 418.131 does not apply because MCL 418.611 and MCL 418.171 were violated.[8]

MCL 418.131(1) provides that the right to recover worker's compensation benefits under the WDCA "shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." However, MCL 418.641(2) provides that if an employer violates MCL 418.171 or MCL 418.611, then that employer's employees "shall be entitled to recover damages from the employer in a civil action because of an injury that arose out of and in the course of employment notwithstanding the provisions of section 131." In other words, if defendant violated sections 171 or 611, then plaintiff is entitled to sue defendant in tort.

"Section 611 governs worker's compensation liability insurance coverage for employers." *Blanzy v Brigadier General Contractors, Inc*, 240 Mich App 632, 639; 613 NW2d 391 (2000). MCL 418.611(1) mandates that:

> (1) Each employer under this act, subject to the approval of the director, shall secure the payment of compensation under this act by either of the following methods:

> \* \* \*

---

[8] This Court reviews de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). In reviewing a motion for summary disposition under MCR 2.116(C)(10), a court considers "affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Greene v A P Prods, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (internal quotations and citations omitted). The motion for summary disposition "tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter in which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Further, the court may not make factual findings on disputed factual issues during a motion for summary disposition and may not make credibility determinations. *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004).

(b) By insuring against liability with an insurer authorized to transact the business of worker's compensation insurance within this state.

In this case, defendant secured worker's compensation insurance from Accident Fund. Plaintiff nevertheless asserts that defendant did not secure workers compensation insurance *for him* because no premium was paid to Accident Fund for him. However, "[n]othing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself." *Thomason v WCAC Contour Fabricators, Inc*, 255 Mich App 121, 124-125; 662 NW2d 51 (2003). Here, nothing in the plain language of the statute requires that the employer pay a premium for each employee in order to satisfy the requirements of section 611. Moreover, even accepting that no premium was actually paid for plaintiff, nothing in the statutory language permits an insurance company issuing a worker's compensation policy to avoid paying benefits to an employee on the basis that the employer failed to pay its premium. Instead, MCL 418.621(2) mandates that an insurer issuing a policy must cover all of the insured employer's employees.[9] Further, MCL 418.621(4)(g) provides that all policies issued pursuant to the WDCA must include the following language regarding termination of the insurance policy:

> (g) That [the insurer] will file with the bureau of workmen's compensation at Lansing, Michigan, at least 20 days before the taking effect of any termination or cancellation of this contract or policy, a notice giving the date at which it is proposed to terminate or cancel this contract or policy; and that *any termination of this policy shall not be effective as far as the employees of the insured employer are concerned until 20 days after notice of proposed termination or cancellation is received by the bureau of workmen's compensation*[.] [emphasis added.]

This language, which appears in the worker's compensation policy issued to defendant, clearly indicates that, even if Accident Fund had cancelled the policy because of defendant's failure to pay a premium on all of its employees, said employees would still be covered until 20 days *after* notice of the termination was received by the bureau of workmen's compensation. Thus, plaintiff cannot establish that defendant violated MCL 418.611.[10]

---

[9] MCL 418.621(2) provides:

> The state accident fund and each insurer issuing an insurance policy to cover any employer not permitted to be a self-insurer under section 611 shall insure, cover, and protect in the same insurance policy, all the businesses, employees, enterprises, and activities of the employer.

[10] Plaintiff argues that there is a factual dispute as to whether defendant violated MCL 418.611 because he presented facts showing that Accident Fund was *not* paying benefits pursuant to the worker's compensation provision in defendant's insurance policy and was instead providing benefits pursuant to the general liability provision in the policy. Nevertheless, it is clear that, pursuant to MCL 418.621(2), if an insurer issues a worker's compensation policy to an

Whether defendant violated MCL 418.171 is a more difficult question. MCL 418.171 extends the requirement to secure payment for worker's compensation to "principals" who pay contractors to execute work on their behalf. MCL 418.171 "addresses what are commonly referred to as statutory employers." *McCaul v Modern Tile and Carpet, Inc*, 248 Mich App 610, 620; 640 NW2d 589 (2001). "Section 171 was intended to protect employees of contractors and subcontractors who failed to procure adequate worker's compensation insurance." *Id*. "According to its plain language, subsection 171(4) provides independent contractors who would otherwise be considered employees under the WDCA a vehicle for recovery where their employer has attempted to circumvent the provisions of § 171 or § 611." *Id*. at 620-621.

MCL 418.171(4) provides in pertinent part:

> (4) Principals willfully acting to circumvent the provisions of this section or section 611 by using coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors *for the purpose of evading this section or the requirements of section 611 shall be liable subject to the provisions of section 641*. [emphasis added.]

Viewing the facts in the light most favorable to plaintiff, defendant employed plaintiff on the condition that his employment would be "off the books." Further, according to plaintiff's testimony, while he was being transported to the hospital following the accident, he was told by Peterson to *not* tell the hospital that he was employed by defendant and that there was no worker's compensation coverage for him. Plaintiff also testified that a short while after he was released from the hospital, Krumm and McCullen came to his home, told him that there was no worker's compensation coverage, and attempted to get him to sign paperwork backdating his employment.[11] On the other hand, defendant presented evidence that it was plaintiff's idea to be paid off the books and that defendant only reluctantly went along with it. Further, defendant presented testimony from Krumm and McCullen that plaintiff was told that he was covered by worker's compensation insurance.

Given the widely divergent proofs, it is clear that there is a genuine issue of material fact as to whether defendant used "coercion, intimidation, deceit, or other means to encourage persons who would otherwise be considered employees within the meaning of this act to pose as contractors for the purpose of evading" liability under sections 171 or 611 of the WDCA. Taking the facts as presented by plaintiff, defendant did use deceit, i.e., telling plaintiff that he was not covered by worker's compensation insurance and encouraging him to withhold his employment status from medical personnel. It can be reasonably inferred that the purpose of the deceit was to prevent plaintiff from making a claim for worker's compensation benefits, which would in turn allow defendant to avoid liability under sections 171 or 611 of the WDCA.

---

employer, then that insurer must provide coverage under that policy irrespective of whether another provision of the insurance policy would also provide coverage for an injured employee.

[11] During oral argument before the trial court, plaintiff's attorney represented to the court that worker's compensation benefits were only paid to plaintiff after he filed his complaint.

Because there is a genuine issue of material fact on this issue, the trial court erred in granting summary disposition in defendant's favor.

## III. MOTION TO AMEND THE COMPLAINT

Plaintiff next argues that the trial court erred in denying his motion to amend his complaint to add a claim for intentional tort and for breach of contract.[12]

We first address whether the trial court abused its discretion in denying plaintiff's motion to amend his complaint to add a claim for intentional tort. As explained by our Supreme Court in *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 188; 551 NW2d 132 (1996):

> [T]he issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the court, while the issue whether the facts are as plaintiff alleges is a jury question. If the latter issue were for the court, all jury trials in this type of case would have been eliminated, and we find that this was not the intention of the Legislature. [Quoting *McNees v Cedar Springs Stamping Co*, 184 Mich App 101, 104; 457 NW2d 68 (1990).]

MCL 418.131(1) provides in pertinent part:

> (1) The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had

---

[12] We review for abuse of discretion a trial court's denial of a motion to amend a complaint. *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013). Although a trial court has discretion:

> Amendment is generally a matter of right rather than grace. *Patillo v Equitable Life Assurance Society of the United States*, 199 Mich App 450, 456; 502 NW2d 696 (1992). A trial court should freely grant leave to amend if justice so requires. MCR 2.118(A)(2). Leave to amend should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile. [*Jenks v Brown*, 219 Mich App 415, 419-420; 557 NW2d 114 (1996).

Here, the trial court stated that it was denying plaintiff's motion to amend because the amendments would be futile. "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *PT Today Inc v Comm'r of the Office of Financial & Ins Serv*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted).

actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

"An employer's intentional conduct 'is the requisite standard triggering the exception to the [WDCA] exclusivity provision.' " *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 713; 777 NW2d 205 (2009), quoting *Gray v Morley (After Remand)*, 460 Mich 738, 742; 596 NW2d 922 (1999) (brackets in original). Our Supreme Court has held that "to state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." *Travis*, 453 Mich at 172. There must be a specific intent to injure, which may be proved with direct or circumstantial evidence. *Id*. at 172-173. In order to establish intent to injure using circumstantial evidence, a plaintiff must establish (1) that the employer had "actual knowledge," (2) that an injury was "certain to occur," and (3) that the employer "willfully disregarded" that knowledge. *Id*. at 173, 180. Critically, the Supreme Court stated that an injury is "certain to occur" if an employee is subjected "to a continuously operative dangerous condition" that his or her employer knew would cause an injury. *Id*. at 178, 182, 186.

On appeal, plaintiff argues that he presented evidence sufficient to rebut the claim that amendment of his complaint was not futile and the trial court abused its discretion when it denied his motion amend his complaint to add an intentional tort claim. We agree. If a plaintiff presents a legal and a factual basis for a claim, the claim is not futile. See *Dagen v Hastings Mut Ins Co*, 166 Mich App 225, 231; 420 NW2d 111 (1987) (holding that if a factual basis for a claim is established, justice requires that leave to amend be granted); and *PT Today Inc v Comm'r of the Office of Financial & Ins Serv*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (holding that a claim is not futile if it is legally sufficient on its face).

A number of the intentional tort exception cases have dealt with industrial machinery, the use of which presented the possibility of risk either by untriggered operation or a lack of proper guarding. In those cases, courts have attempted to determine whether the possibility of mechanical malfunction constituted a "continuously operative dangerous condition" and whether this likelihood was so apparent that an employer had "actual knowledge" of it and the danger was so manifest that the employer's failure to take affirmative action to adjust or modify the machine constituted a willful disregard of that knowledge. Application of this test in those cases has proven difficult and variable.

Fortunately, this case presents a different and simpler scenario. It does not involve a malfunctioning machine; indeed, the Bobcat performed exactly as it was supposed to. Plaintiff alleges and presents evidence that his supervisor, Peterson, was the direct creator of the "continuously operative dangerous condition" by directing plaintiff to stand under the Bobcat bucket. Plaintiff also presented evidence that a company owner, Krumm, witnessed Peterson's actions and stated, "That's dangerous as hell, you guys better not do that" and "You guys don't

do that no more like that."[13]  Given these statements, there is evidence that both Krumm and Peterson were aware of the "continuously operative dangerous condition" and that Peterson acted with willful disregard of that knowledge.  This evidence was further supported by Krumm's deposition testimony that he had been around long enough to know when someone was going to get hurt and that using the Bobcat method, "you're guaranteed to get hurt."  He went on to testify that there was "no way in heck [he would] ever tell somebody to stand under a bucket to do that," nor would he stand beneath the bucket himself.

The trial court erred by ignoring this evidence and instead focusing on the probability that injury would occur.  This approach was rejected by the Supreme Court in *Travis*, where the Court stated:

> When an injury is 'certain' to occur, no doubt exists with regard to whether it will occur.  Thus, the laws of probability, which set forth the odds that something will occur, play no part in determining the certainty of injury.  Consequently, scientific proof that, for example, one out of ten persons will be injured if exposed to a particular risk, is insufficient to prove certainty.  Along similar lines, just because something has happened before on occasion does not mean that it is certain to occur again.  Likewise, just because something has never happened before is not proof that it is not certain to occur.  [*Id*. at 174.]

Instead of determining whether an injury was probable on any given use of the Bobcat with a man beneath it, the trial court should have determined whether Peterson subjected plaintiff "to a continuously operative dangerous condition" that he knew would cause an injury.  See *id*. at 178, 182, 186.

In *Travis*, although a supervisory employee knew that a press was malfunctioning, our Supreme Court concluded that the supervisory employee did not know the injury was "certain to occur" because (1) the press only malfunctioned intermittently; (2) the supervisory employee was willing to demonstrate how the press worked (which he likely would not have done if he believed an injury was certain to occur); (3) the supervisory employee had just adjusted the machine before assigning it to the plaintiff, which had previously alleviated the problem for at least a couple of days; and (4) in the past the press had cycled so slowly that the other employees had been able to avoid injury when the press malfunctioned.  *Id*. at 182.  On those facts, the Court concluded that "injury was not certain to occur because plaintiff was not required to confront a continuously operating dangerous condition."  *Id*.  In this case, however, the Bobcat method was not something that would only intermittently cause an injury.  Peterson, the supervisory employee, did not stand below the bucket in order to demonstrate what plaintiff was supposed to do, and in fact, Krumm testified that he would not have stood under the bucket

---

[13] See *Travis*, *453 Mich at 173-174* ("A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee has actual knowledge that an injury would follow from what the employer deliberately did or did not do.").

because an injury was guaranteed. Further, there is nothing on the record to indicate the danger posed by the Bobcat method could be completely eliminated—albeit for a temporary period of time—in order to render the process safe for one or two days at a time. Finally, there is nothing in this record to indicate that plaintiff could have even avoided injury once the Bobcat bucket pushed the post further into the ground than was expected. Thus, this case is distinguishable from the facts in *Travis*.

Instead, the facts in this case are closer to those in *Golec*, a case consolidated with *Travis*. In that case, the plaintiff had to load wet scrap metal into a furnace. *Id*. at 157-158. Contained within the scrap were aerosol cans, which the defendant contended the plaintiff was supposed to remove before loading the scrap. *Id*. at 186. The plaintiff, however, alleged that he was loading the scrap in the same fashion as he was trained. *Id*. at 186. While loading the scrap, an explosion occurred and the plaintiff was severely burned. *Id*. at 159. On appeal, the plaintiff argued that an injury was certain to occur because every load of scrap had the potential to explode because there were aerosol cans mixed in it and the scrap was wet. *Id*. Our Supreme Court agreed, concluding that if the facts alleged by the plaintiff were established, then the plaintiff would have proved "the existence of a continually operative dangerous condition." *Id*. Much like the case in *Golec*, if the facts alleged by plaintiff are true, i.e., that he was ordered by a supervisory employee to stand beneath the bucket of a Bobcat while his supervisor used the bucket to push or pound the posts into the ground, then it is clear that plaintiff was exposed to the existence of a continually operative dangerous condition because every time the bucket was used the potential existed that it would knock the post too far, thereby resulting to injury to plaintiff.

This case is also similar to the situation in *Fries*. In that case, this Court held that "every encounter" between an employee's loose clothing and a stamping machine "inherently embodied the potential for inadvertent, unexpected cycling of the machine." *Fries*, 285 Mich App at 716-717. In that case, the evidence established that loose clothing could actuate the press, that the employer took no steps to prevent it from occurring by installing available safety equipment, and that the employer failed to warn the employee that loose clothing would actuate the press. *Id*. at 717. After review, this Court held that the facts alleged by the plaintiff and contained within the record were sufficient for a reasonable jury to conclude that an injury was certain to occur, so the trial court did not err in concluding that a jury question existed regarding whether the danger presented by the stamping machine "constituted a continuously operative dangerous condition." *Id*.

Because the facts as presented by plaintiff are sufficient to support a finding of intentional tort, the trial court abused its discretion when it concluded such an amendment to the complaint would be futile. *Sanders*, 303 Mich App at 8-9. Although further discovery may still prove or disprove plaintiff's allegations, at this juncture, plaintiff should be allowed to amend his complaint to add an allegation of intentional tort.[14]

---

[14] Plaintiff also argues that he should be allowed to amend his complaint to add a claim for breach of contract. The trial court denied plaintiff's motion to add a claim for breach of contract because, having granted defendant's motion for summary disposition and denied plaintiff's

## IV. CONCLUSION

Because defendant had a worker's compensation policy, defendant did not violate MCL 418.611. There is, however, a genuine issue of material fact as to whether defendant violated MCL 418.171(4) by using deceit to tell plaintiff he was not covered by worker's compensation, so we reverse the trial court's order granting summary disposition on plaintiff's negligence claims. Further, we reverse the trial court's denial of plaintiff's motion to amend his complaint to add a claim for intentional tort because plaintiff presented sufficient facts to establish that he had a viable claim for intentional tort. Further, given our reinstatement of these claims, the jurisdictional limits of the circuit court have been met and plaintiff should be allowed to renew his motion to amend his complaint to add a count for damages based on defendant's decision to employ him "off the books."

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Douglas B. Shapiro

---

motion to amend his complaint to add a claim for intentional tort, the breach of contract claim, standing alone, was insufficient to meet the jurisdictional threshold of the circuit court. Given our resolution of those issues, however, the court's rationale no longer applies. Accordingly, on remand the trial court should consider anew plaintiff's motion to amend his complaint to add a breach of contract claim.