# STATE OF MICHIGAN

# COURT OF APPEALS

SPENCER SHUMAKER,

Plaintiff-Appellee,

UNPUBLISHED
April 17, 2018

v

No. 336866
Eaton Circuit Court
LC No. 2016-000365-FH

MERITT TOOL & DIE and
EUGENE D. MILLER,

Defendants-Appellants.

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

In this action alleging a claim under MCL 418.131(1), the intentional tort exception to the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq*., defendants appeal by leave granted[1] an order denying their motion for summary disposition under MCR 2.116(C)(10). We reverse and remand for entry of an order granting defendants' motion.

Plaintiff worked as a laborer at defendant Meritt Tool & Die (Meritt), owned by defendant Eugene Miller. On August 18, 2014, plaintiff was working on a Toledo 60-ton press, a "punch press" used for cutting steel. To use the press, the operator had to put a steel part into the machine with a die that punches out a certain shape. When the operator pushed the foot pedal, the ram would come down and stamp the part placed in the machine. If the operator pushed the foot pedal down too long, the machine could "double cycle," or stamp twice in a row with a single press on the foot pedal. The operator could place the part into the machine using "tabs" on the side of the part, or by using a tool such as a screwdriver or pliers. If an operator used a tool or held the tabs on the part when placing the part into the press, the ram in the machine could not reach the operator's hands if the press cycled. To avoid injury, employees were instructed to never put their hands on top of the part for any reason while it was in the machine.

---

[1] *Shumaker v Merritt Tool & Die*, unpublished order of the Court of Appeals, entered June 27, 2017 (Docket No. 366866).

-1-

Plaintiff was injured when the machine double cycled while his hand was on top of a part that he was removing from the machine. He lost three fingers on his left hand. Plaintiff was not sure if the machine double cycled on its own or if something fell on the uncovered foot pedal, activating the machine to cycle again.

Defendant Miller's son had been injured on the same press when he was about 13 years old, approximately 15 years before the incident in this case. Defendant Miller's son was not authorized to use the machine and had not received any training. The injury he experienced was much less serious than plaintiff's injury.

In 2012, another Meritt employee was injured while operating a 150-ton press similar to the press that injured plaintiff. However, the injury was of a different type and had a different cause. After that injury, the Michigan Occupational Safety and Health Administration (MIOSHA) issued citations, including citations for failure to provide hand tools to place and remove parts and failure to cover the foot pedal of the 150-ton press.

Plaintiff filed a complaint under the intentional tort exception of the WDCA. Defendants filed a motion for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was unable to prove that they engaged in an intentional tort because plaintiff knew how to operate the press safely, and it was his failure to do so that caused his injury. Plaintiff responded by arguing that defendants subjected plaintiff to a continuously operative dangerous condition. In support of that position, plaintiff alleged that defendants knew it was unsafe to have an uncovered foot pedal and that double cycling was a known risk of an uncovered foot pedal. Plaintiff also argued that defendants knew that employees were taking insufficient precautions in using the machine and defendants were previously cited by MIOSHA for failure to cover a foot pedal and for failure to provide hand tools to place and remove parts on another press. The trial court denied defendants' motion, concluding that this case was a "close call" and that the "tie" should go to the nonmoving party.

We review de novo a lower court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and should be granted if, after consideration of the evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue regarding any material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); *Lakeview Commons v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010).

In evaluating a claim under the intentional tort exception of the WDCA, the circuit court must "determine as a matter of law whether the plaintiff has alleged sufficient facts to sustain the intentional tort claim." *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010). If the court determines the facts alleged are sufficient, any questions of veracity, credibility, and weight of evidence are for the jury to decide. *Id*.

Generally, the WDCA provides the exclusive remedy when an employee sustains a workplace injury. MCL 418.131(1); *Golec v Metal Exch Corp*, 208 Mich App 380, 382; 528 NW2d 756 (1995). The only exception to the "exclusive remedy" rule is in the case of an intentional tort. MCL 418.131(1) provides:

An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

To commit a "deliberate act" with the specific intent to injure, "an employer must have made a conscious choice to injure an employee and have deliberately acted or failed to act in furtherance of that intent." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 180; 551 NW2d 132 (1996) (BOYLE, J.). The *Travis* Court determined that the Legislature intended the second sentence to apply "when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence." *Id*. at 173. Intent to injure can be inferred "if the employer had actual knowledge that an injury was certain to occur, under circumstances indicating deliberate disregard of that knowledge." *Id*. at 180. But the act or omission of the employer must go beyond "mere negligence." *Id*. at 178-179.

In attempting to prove that an employer had "actual knowledge," it is not enough to show that an employer had "constructive, implied, or imputed knowledge." *Id*. at 173; see also *Palazzola v Karmazin Prod Corp*, 223 Mich App 141, 149; 565 NW2d 868 (1997). Likewise, it is not enough "to allege that the employer should have known, or had reason to believe, that injury was certain to occur." *Travis*, 453 Mich at 173.

An injury is "certain to occur" when there is "no doubt" that the injury will occur. *Id*. at 174. This is an "extremely high standard," and neither the probability that something will happen nor the fact that something has happened in the past is enough to show that it is "certain to occur." *Id*. Conversely, the absence of previous injury does not eliminate the certainty that an injury will occur. *Id*. To be "certain," the injury must arise from the employee's duties, and there must be no opportunity for the employee to exercise volition. *Bagby v Detroit Edison Co*, 308 Mich App 488, 495; 865 NW2d 59 (2014) (citation omitted).

In this case, plaintiff argues that defendants subjected him to a "continuously operative dangerous condition." A continuously operative dangerous condition can be the basis for establishing that an employer had knowledge that an injury was "certain to occur" if the employer knows the condition will cause injury and fails to inform the employee about the condition. *Travis*, 453 Mich at 178; *Alexander v Demmer Corp*, 468 Mich 896, 896-897; 660 NW2d 67 (2003). Defendants argue that there was no continuously operative dangerous condition because the press double cycled only intermittently, no trained employee had been seriously injured before, and plaintiff had been able to operate the press safely for approximately 45 minutes on the day of his injury without incident.

In *Travis*, our Supreme Court held that the plaintiff was not subjected to a continuously operative dangerous condition such that the employer had knowledge that an injury was "certain to occur" because: (1) the press at issue double cycled only intermittently; (2) the supervisor had shown that he was willing to operate the press himself; (3) previous adjustments had allowed the press to run for "at least one or two days" before double cycling again, and (4) all prior operators were able to withdraw their hands in time if the machine double cycled. *Travis*, 453 Mich at 182.

Conversely, in *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706; 777 NW2d 205 (2009), this Court held that there was a genuine issue of material fact whether the press operation constituted a continuously operative dangerous condition because every encounter between an operator's loose clothing and the press's light sensors "inherently embodied the potential for inadvertent, unexpected cycling of the machine" and the defendant made no effort to install available safety equipment that could have avoided such a trigger. *Id*. at 717. Similarly to *Fries*, this Court held in *Johnson* that a genuine issue of material fact existed concerning whether the plaintiff proved the existence of a continually operative dangerous condition when a boiler was in disrepair, which led to "dangerous ash spews for at least a year," causing burn injuries. *Johnson*, 288 Mich App at 700, 702.

In this case, plaintiff failed to establish a genuine issue of material fact regarding whether the press constituted a continuously operative dangerous condition. There is a dispute about how often the machine double cycled. Regardless of how often the machine actually double cycled, it is clear the machine only double cycled intermittently and previous operators were able to avoid injury when the machine double cycled. It is also true that not every push of the foot pedal carried the inherent risk of double cycling.

However, even if the machine had double cycled regularly without additional pressure on the foot pedal, this would not have constituted a continuously operative dangerous condition because there were safe methods to complete the job. Three other employees testified that there were safe methods of placing parts into the machine. Employees could either use the "tabs" on the part itself or a tool, such as a screwdriver or pliers, to safely place and remove the part. If an employee used the "tabs" or used tools, there was no need to place his or her hand on top of the part in the machine, and the employee's hand would be out of the way of the ram if a double cycle were to occur. There is no evidence that injury ever occurred while using either of these safe methods. Despite knowledge of these safe alternatives, plaintiff had his hand on the part when the injury occurred. There is no dispute that the only way to experience the injury that plaintiff suffered would have been to put his hand on the part while it was in the press. Considering all of the evidence in the light most favorable to plaintiff, a reasonable jury could not conclude that plaintiff was subjected to a continuously operative dangerous condition.

Even if the press were a continuously operative dangerous condition, this could only form the basis of a claim under the intentional tort exception if the employer knew that the condition would cause injury and did not inform the employee about the condition. See *Alexander*, 468 Mich at 896. Plaintiff cannot satisfy this requirement because there is no dispute that plaintiff was aware of the machine's potential to double cycle.

Moreover, regardless of whether there was a continuously operative dangerous condition, injury was still not "certain to occur" in this case. Defendants argue that injury was not certain to occur because defendant Miller had trained plaintiff on how to safely place and remove the parts. In *Golec*, this Court held that there was a genuine issue of material fact regarding whether injury was certain to occur when the defendants knew that the scrap the plaintiff was loading contained hazardous materials that could cause explosions, the plaintiff had to use a loader that did not have a protective shield, the plaintiff did not have protective clothing, and the plaintiff had experienced a minor injury earlier in the shift while loading the scrap but was told to resume working. *Golec*, 208 Mich App at 384-385. This Court held that a reasonable jury could

conclude that the defendants knew that an injury was certain to occur under these conditions. *Id*. at 388.

In this case, plaintiff failed to present sufficient evidence to indicate that there was "no doubt" that injury would occur. See *Johnson*, 288 Mich App at 697. It is true that previous injuries can be a factor in determining whether injury was certain to occur, *Golec*, 208 Mich App at 387. In this case, however, although another employee had been injured while operating a different press, the injury was not caused by putting a hand in the press, and the injury involved a fingernail rather than partial amputation. Further, although defendant Miller's son was injured on the same press that injured plaintiff, there is no indication that the injury was serious, nor is there any indication that defendant Miller's son had any training or knowledge about how to use the press. Additionally, defendants did not force plaintiff to work without safeguards. Plaintiff had plenty of opportunity to exercise his volition by using safe methods to place and remove parts. See *Bagby*, 308 Mich App at 495. Therefore, regardless of whether the press could be considered a continuously operative dangerous condition, a reasonable jury could not conclude that injury was certain to occur.

Plaintiff further argues that knowledge of the double cycling coupled with failure to install safety devices on plaintiff's 150-ton press as required by MIOSHA constitute knowledge that an injury was certain to occur. In *Palazzola*, 223 Mich App at 151-152, MIOSHA had cited the defendants for a violation in the past that was similar to the violation cited after the subject injury. However, *Palazzola* held that the MIOSHA violations did not constitute actual knowledge that injury was certain to occur in a different situation because liability cannot be premised upon "constructive, imputed, or implied knowledge" and "conclusory statements by experts are insufficient" to prove certainty. *Id*. at 152. In this case, MIOSHA cited defendant for failure to provide hand tools or cover a foot pedal on a 150-pound press after an employee was injured on that press. However, the injury was a different kind of injury with a different cause on a different press. Here, knowledge that a different injury with a different cause occurred on a similar press in 2012 is not actual knowledge that this injury would occur on this press when it double cycled.

Even if plaintiff could establish that defendants had actual knowledge that injury was certain to occur, plaintiff cannot establish that defendants willfully disregarded that knowledge. In *Johnson*, this Court held that a reasonable jury could conclude that the defendant willfully disregarded its knowledge that injury was certain to occur because, despite knowledge of dangerous ash spews for at least a year that had caused burns, the defendant failed to do anything to remedy the situation. *Johnson*, 288 Mich App at 704. In *Fries*, this Court held that a reasonable jury could conclude that the defendant "willfully disregarded" knowledge that injury was certain to occur because the defendant knew that loose clothing had triggered the machine in the past, yet ordered the plaintiff to work the machine without installing any safety devices or warning the plaintiff of the potential trigger. *Fries*, 285 Mich App at 718. Conversely, in *Travis*, this Court held that the employer did not willfully disregard actual knowledge where adjustments to the machine had temporarily corrected the double cycling in the past, the employer had made adjustments to the machine that day, and the employer had thereafter operated the machine himself. *Travis*, 453 Mich at 182-183.

In this case, even if injury was certain to occur, plaintiff cannot show that defendants willfully disregarded actual knowledge that injury was certain to occur. The press cycled only intermittently and defendant Miller watched plaintiff the day of the injury to make sure he could operate the press safely. Additionally, methods of safe operation would have prevented injury even if the press double cycled, and there was no inherent risk of double cycling every time the operator pushed the foot pedal.

Although employees had reported double cycling in the past, defendant Miller had responded that they could use tools to place the parts in the machine in order to avoid injury. Multiple employees confirmed that there was no need to put a hand where plaintiff had his hand when the injury occurred. Plaintiff was aware that he should never put his hand on the part, as he did in this case, and plaintiff was aware that the machine could double cycle. It is true that MIOSHA cited defendants for failure to cover the foot pedal on a different press, and it is true that defendants replaced the foot pedal on this press with hand buttons after this injury occurred. However, while replacing the foot pedal with hand buttons may have made the machine safer, safe operation was possible even in the face of double cycling if the employee followed defendant Miller's instructions. Defendant Miller's failure to replace the foot pedal with the safer hand buttons may have been negligent, but there is no indication that this failure met the high standard of willful disregard of actual knowledge that injury was certain to occur.

Reviewing all evidence in the light most favorable to plaintiff, plaintiff has failed to meet his burden to establish a genuine issue of material fact. Although defendants had actual knowledge that the machine could double cycle, plaintiff failed to meet the "extremely high standard" required to show that there is a genuine issue of material fact about whether an injury was certain to occur. See *id.* at 174. Further, even if plaintiff could establish that defendants had actual knowledge that injury was certain to occur, plaintiff produced no evidence to show that defendants willfully disregarded this knowledge. Because no genuine issue of material fact exists regarding whether defendants committed an intentional tort, the trial court erred in denying defendants' motion for summary disposition.

Reversed and remanded for entry of an order granting defendants' motion for summary disposition. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens

-6-