# STATE OF MICHIGAN

# COURT OF APPEALS

ROSALIE M. BAGBY, Personal Representative of
the Estate of DALE LEE BAGBY II,

       Plaintiff-Appellee,

v

DETROIT EDISON COMPANY,

       Defendant-Appellant.

UNPUBLISHED
October 23, 2014

No. 311597
Wayne Circuit Court
LC No. 11-001670-NO

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying its motion for summary disposition. The court determined that summary disposition was improper because plaintiff, Rosalie M. Bagby, personal representative of the estate of Dale Lee Bagby II, presented a genuine issue of material fact with respect to her claim for recovery under the intentional tort exception of the Workers' Disability Compensation Act (WDCA), MCL 418.131(1). We reverse and remand.

Defendant argues that the trial court erred because there was no evidence that it had actual knowledge that an injury was certain to occur and that it willfully disregarded that knowledge. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). "A summary disposition motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*, citing *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "When deciding a summary disposition motion, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in

---

[1] See *Bagby v Detroit Edison Co*, 495 Mich 983; 843 NW2d 926 (2014) ("in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted").

the light most favorable to the opposing party." *Id.* The interpretation and application of statutes are reviewed de novo. *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010).

Generally, the benefits provided by the WDCA are the sole remedy for employees to recover from their employers when the employees sustain work-related injuries or occupational diseases. *Johnson*, 288 Mich App at 695-696. The only exception to this rule is when the employee can show that his employer committed an intentional tort. MCL 418.131(1); *Johnson*, 288 Mich App at 696. For purposes of the WDCA, an "intentional tort" is not a true intentional tort. *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 168; 551 NW2d 132 (1996). Rather, it exists

> when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. [MCL 418.131(1).]

Thus, to recover under the intentional tort exception of the WDCA, a plaintiff must prove that his injury was the result of the employer's deliberate act or omission, and the employer specifically intended an injury. See MCL 418.131(1); *Travis*, 453 Mich at 169-180. In other words, a plaintiff must show that "an employer . . . made a conscious choice to injure an employee and . . . deliberately acted or failed to act in furtherance of that intent." *Id.* at 180.

There are two ways for a plaintiff to show that an employer specifically intended an injury. The plaintiff can provide direct evidence that the employer "had the particular purpose of inflicting an injury upon his employee." *Travis*, 453 Mich at 172. In the alternative, an employer's intent can be proven by circumstantial evidence, i.e., that the employer "has actual knowledge that an injury is certain to occur, yet disregards that knowledge." *Id.* at 173, 180.

Constructive, implied, or imputed knowledge does not satisfy this actual knowledge requirement. *Johnson*, 288 Mich App at 697. In addition, "[a]n employer's knowledge of general risks is insufficient to establish an intentional tort." *Herman v City of Detroit,* 261 Mich App 141, 149; 680 NW2d 71, 77 (2004); see also *House v Johnson Controls, Inc*, 248 F Appx 645, 647-648 (CA 6, 2007). "In the case of a corporate employer, a plaintiff need only show that 'a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do.' " *Johnson*, 288 Mich App at 697, quoting *Fries v Mavrick Metal Stamping, Inc*, 285 Mich App 706, 714; 777 NW2d 205 (2009).

An injury is "certain to occur" if "there is no doubt that it will occur." *Johnson*, 288 Mich App at 697; see also *Travis*, 453 Mich at 174. As the Supreme Court explained in *Travis*, 453 Mich at 174:

> [T]he laws of probability, which set forth the odds that something will occur, play no part in determining the certainty of injury. Consequently, scientific proof that, for example, one out of ten persons will be injured if exposed to a particular risk, is insufficient to prove certainty. Along similar lines, just because something has happened before on occasion does not mean that it is certain to occur again.

Likewise, just because something has never happened before is not proof that it is not certain to occur. [Footnote omitted.]

In addition, "conclusory statements by experts are insufficient to allege the certainty of injury contemplated by the Legislature." *Id.* The existence of a dangerous condition does not mean an injury is certain to occur. *Id.* An employer's awareness of a dangerous condition, or knowledge that an accident is likely, does not constitute actual knowledge that an injury is certain to occur. *Id.* at 698. The Supreme Court has also reasoned that an employer's attempts to repair a machine and its repeated warnings to employees may be evidence that the employer did not have actual knowledge that an injury was certain to occur. *Id.* at 177. On the other hand, "[a] continuously operative dangerous condition may form the basis of a claim under the intentional tort exception only if the employer *knows* the condition will cause an injury and refrains from informing the employee about it." *Alexander v Demmer Corp*, 468 Mich 896, 896; 660 NW2d 67 (2003) (emphasis in original).

Finally, the plaintiff must show that the defendant *willfully disregarded* its actual knowledge that injury was certain to occur. See MCL 418.131(1); *Travis*, 453 Mich at 179. This requirement is "intended to underscore that the employer's act or failure to act must be more than mere negligence." *Travis*, 453 Mich at 179.

Even assuming arguendo that plaintiff established a deliberate act or a conscious failure to act, she has failed to provide evidence that defendant had actual knowledge an injury was certain to occur and willfully disregarded that knowledge. See MCL 418.131(1); *Travis*, 453 Mich at 172-173. First, plaintiff has not presented evidence that defendant, or a supervisory or managerial employee of defendant, had actual knowledge that an injury was certain to occur. Because defendant is a corporate employer, plaintiff needed to show that "a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do." *Johnson*, 288 Mich App at 697, quoting *Fries*, 285 Mich App at 714 (quotation marks omitted). Plaintiff points to several acts and omissions that allegedly resulted in Dale Bagby's death. As discussed below, there is no evidence that a supervisor knew that any of these acts or omissions was certain to result in injury.

For example, there was evidence that Edmund Bechard, the job supervisor, did not conduct, or inadequately conducted, a prejob briefing before Bagby and the rest of the crew began work on November 11, 2009. Such a briefing should have included discussion on the limits of protection and hazards involved with the job. But it is speculation to conclude that the failure to conduct this briefing would result in Bagby's death. It is even more speculative to conclude that Bechard, or any other supervisor, knew that the failure to conduct the prejob briefing would result in certain injury. The same reasoning applies to plaintiff's argument that Bagby and other employees lacked proper training. Even assuming this is true, one cannot conclude that Bagby would not have been electrocuted if he had the proper training or that defendant knew that the inadequate training of electrical maintenance journeyman (EMJ) apprentices would result in certain injury.

There was also evidence that someone had failed to return the orange barrier rope to its proper position. If it had been in its proper place, the rope would have encompassed the place where Bagby placed his ladder to change the leads. Although Bechard and another supervisor

had visited the job site the day before, there was no evidence that either noticed the barrier was in the wrong place. The accident investigation team concluded that these two supervisors should have noticed this issue; however, plaintiff must establish *actual knowledge*. Constructive, implied, or imputed knowledge is insufficient. See *Johnson*, 288 Mich App at 697. In addition, it is also conjecture to conclude that Bagby would not have placed his ladder in the same area, and thus not been electrocuted, if the rope were in its proper place.

To the extent that plaintiff relies on witnesses' statements that someone was going to get killed or injured and defendant did not prioritize safety, we must again conclude that these statements are insufficient to establish actual knowledge. "[C]onclusory statements by experts are insufficient to allege the certainty of injury contemplated by the Legislature." *Travis*, 453 Mich at 174. In addition, defendant's knowledge that the bus was energized at 40,000 volts and that contact or close proximity would be dangerous, does not constitute actual knowledge that an injury would be certain to occur. "An employer's knowledge of general risks is insufficient to establish an intentional tort." *Herman,* 261 Mich App at 149.

Finally, plaintiff cannot show that defendant had actual knowledge an injury was certain to occur because Bagby had many opportunities to exercise his own discretion. "To be 'known' and 'certain,' an injury must spring directly from the employee's duties, and the employee cannot have had the chance to exercise individual volition." *House*, 248 F Appx at 648. An employer cannot know that an injury is certain to occur when "the employee makes a decision to act or not act in the presence of a known risk" because the employer cannot know in advance what the employee's reaction will be and what steps he will take. *Id.* For example, in *Herman*, 261 Mich App at 150, this Court concluded that there was no evidence the employer committed an intentional tort where the facts showed the decedent's electrocution and death "was the result of decedent's momentary and tragic lapse in judgment." Similarly, in *Palazzola v Karmazin Products Corp*, 223 Mich App 141, 153; 565 NW2d 868 (1997), this Court concluded that there was no evidence the employer committed an intentional tort where the decision to clean the tank, which lead to the inhalation of harmful vapors, was made "on the spot" by a nonsupervisory employee.

In the instant case, Bagby and others made numerous decisions that, along with other factors, ultimately led to his electrocution and death. No supervisor could have known what decisions Bagby was going to make, so no supervisor could have had actual knowledge that an injury was certain to occur. For example, Allan McKinney, an EMJ and Bagby's crew leader at the job site, told Bagby to work with Jeff Cooper, another EMJ apprentice, to change the leads. It appears Cooper was never told to change the leads; he was working on wiring. It also appears that Bagby did not speak with Cooper about helping him. He got the 6-foot ladder, but thought it was too short. Bagby returned to McKinney and asked if a longer ladder were available. McKinney said that Richard Petersen, the other EMJ at the job site, had a longer ladder, but Bagby did not get this ladder. Bagby alone decided where to place the ladder. If he did indeed try to climb on the metal structure, that was also his own discretionary decision. The fact that no one knows exactly why Bagby happened to come close enough to the bus to be electrocuted also indicates that defendant did not have actual knowledge an injury was certain to occur.

Second, there was no evidence that an injury was certain to occur. Plaintiff asserts that because Bagby was changing leads next to 40,000 volts of power, he was in a continuously

-4-

operative dangerous condition. "A continuously operative dangerous condition may form the basis of a claim under the intentional tort exception only if the employer *knows* the condition will cause an injury and refrains from informing the employee about it." *Alexander*, 468 Mich at 896. Defendant did not refrain from telling Bagby or other employees that the line was energized and dangerous. McKinney and Petersen both reminded Bagby at different points on November 9, 10, and 11, 2009, that the line was energized. According to the accident investigation report, "the metal structure" was red-tagged, advising that one should not operate or disturb that equipment. Bagby received training on what red flags mean. Bagby also received training on the importance of keeping a safe distance from energized lines. The evidence shows that Bagby was trained on minimum safe distances about one month before he died. Thus, there is no evidence that defendant hid from Bagby or other employees the fact that the line was energized or that energized lines are dangerous.

Because there was no evidence that defendant had actual knowledge an injury was certain to occur, there was also no evidence that it willfully disregarded that knowledge. To prove willful disregard, one must prove more than mere negligence, "e.g., failing to protect someone from a foreseeable harm." *Palazzola*, 223 Mich App at 150. In this case, however, the evidence demonstrates at most that the harm Bagby sustained was foreseeable and that defendant could have protected Bagby from that harm. There is no evidence that defendant had actual knowledge the harm was certain to occur but willfully disregarded that knowledge. See MCL 418.131(1); *Travis*, 453 Mich at 173.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly