# STATE OF MICHIGAN

# COURT OF APPEALS

TROY WILLIAMS, ALLESHA MORRIS, JOSE
MIRELES, KIM HOPKINS, JOSH LAFAVE,
RYAN EBBINGHAUS, MAMUDA CHAM,
KYLE SMITH, and CRAIG WALSH,

    Plaintiffs-Appellees,

v

CITY OF EAST LANSING, WAYNE BEEDE,
TODD SNEATHEN, and CATHRYN
GARNHAM,

    Defendants-Appellants.

UNPUBLISHED
June 26, 2018

Nos. 335467; 335662
Ingham Circuit Court
LC No.   15-000049-NI

Before:  CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Plaintiffs, Troy Williams, Allesha Morris, Jose Morales, Kim Hopkins, Josh LaFave, Ryan Ebbinghaus, Mamuda Cham, Kyle Smith, and Craig Walsh brought this action alleging that they were exposed to asbestos and mercury between 2013 and 2014, during their employment at the East Lansing Wastewater Treatment Plant.  In Docket No. 335467, defendants, the city of East Lansing, Wayne Beede, Todd Sneathen, and Cathryn Garnham, appeal by right the trial court's order denying their motion for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity.  In Docket No. 335662, defendants appeal by leave granted the same order, which also denied summary disposition under MCR 2.116(C)(4) (subject-matter jurisdiction), (8) (failure to state a claim), and (10) (no genuine issue of material fact) with respect to defendants' additional arguments that plaintiffs' claims were barred by the exclusive remedy provision of the Workers' Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, and that plaintiffs failed to demonstrate the presence of an existing injury.  Because defendants are correct that the WDCA's exclusive remedy provision bars plaintiffs' claims, we must reverse and remand for entry of summary disposition in favor of defendants.

## I. FACTS

Plaintiffs were employed as pump operators and maintenance specialists at East Lansing's Wastewater Treatment Plant (WWTP).  As part of their job duties, they were required

-1-

to go through tunnels where steam pipes had asbestos-containing insulation. During their employment tenure, a three-ring binder existed on the property that had been generated in 2007 when the city of East Lansing retained Fibertec Industrial Hygiene Services, Inc. (Fibertec) to perform a comprehensive building inspection in order to assess the status of their asbestos containment. The report from this study indicated that some materials that were tested contained asbestos, while others did not. Fibertec recommended, among other things, that the city notify building personnel of the known and assumed asbestos-containing materials on the property, that it provide asbestos hazard awareness training, and that any materials that might contain asbestos be labeled. Retired Process Control Supervisor Charles Peterson stated that he did not inform employees about asbestos or provide asbestos training, and Retired Superintendent Jeffrey Johnson testified that materials containing asbestos were not labeled and no warning signs were placed. However, Peterson stated that abatements of friable asbestos were performed between 2007 and 2010.

Plaintiffs Williams and LaFave testified that they discovered and cleaned up pieces of asbestos insulation on the floor of the tunnels starting in April 2013. Williams and LaFave testified that defendant Beede, a maintenance supervisor, threatened to fire them if they mentioned asbestos in the plant. Beede and Johnson testified that most of the plant's insulation was fiberglass, and Beede stated that he knew the difference between fiberglass and asbestos insulation.

Plaintiff Morris testified that she began raising safety issues with defendant Garnham in October 2013. A safety committee was formed, which met in October 2013, January 2014, and February 2014. According to Williams, in January 2014, more material fell and he began asking why it had not been picked up. Beede admitted that he suspected that the insulation brought to his attention in January 2014 might contain asbestos. Beede stated that he told LaFave to clean it up, but when LaFave raised the possibility that it might contain asbestos, Beede told LaFave to "just leave it alone then." According to Beede, he was in the process of contracting someone to remove the insulation and repair the steam line.

On February 25, 2014, Morris noted in an e-mail that she and Williams had been informed of the 2007 asbestos report for the first time at a safety meeting. According to Garnham, Morris and Williams came to her office to express a concern about asbestos in the plant and raised concerns about Beede directing employees to clean up materials that could contain asbestos. Garnham showed them the 2007 asbestos report. Williams and Morris testified that this was the first time they learned about the report.

On February 27, 2015, defendant Sneathen e-mailed Garnham, stating that "the asbestos that is no longer on the piping needs to be taken care of." Garnham e-mailed Sneathen indicating that Fibertec had been contacted to do air quality sampling. The same day, Garnham issued a memorandum to the plant staff advising them that "[t]here are several areas of the [plant] where pipe insulation material has fallen off or is damaged. This material may contain asbestos." The memorandum informed employees of the locations where the insulation had fallen, notified them that a contractor would be coming on-site to properly remove and dispose of the material, and cautioned them as follows, typed in bold font: "Avoid going into areas where insulation has fallen off or is damaged! Do not disturb any of this material! Do not attempt to clean up or remove this material!" It also requested that the staff notify Garhnam if anyone observed

additional locations where insulation had fallen off or been damaged so that it could properly be tested and removed.

Fibertec removed six linear feet of asbestos-containing pipe insulation from the tunnel floor on February 27, 2014. Fibertec reported that air clearance samples indicated a concentration below state-imposed levels and "the area is safe to re-occupy following the proper clean-up and disposal of the debris by a licensed contractor." Subsequently, additional abatements were performed based on employee reports, and the remainder of the plant's asbestos insulation was abated and replaced between February 9, 2015, and March 5, 2015.

There was also a mercury spill at the plant in November 2013. Beede testified that he intended to clean a manometer, which had not been working properly. The manometer contained mercury. Williams stated that he told Beede that he did not know if they should have mercury in the shop, to which Beede responded by laughing. Beede told another employee that mercury was harmless and he had played with it as a child. Williams left for lunch, and when he returned, "we opened the door, [Beede] was just sitting there with a manometer upside down, like on this block of wood, and then there was a big pool of mercury about the size of a basketball." Williams stated that later in the day, the mercury was gone and the manometer was in the sink, which feeds into the wastewater system at the plant.

Williams stated that at the end of the day, which was a Friday, he and Scott Hauser decided to inform Garnham about the incident. Hauser testified that he called Garnham, who told him that she would speak with Beede on Monday morning. Various employees testified that Garnham asked Beede about the mercury the following Monday and Beede denied that a spill had occurred. The employees stated that Garnham took Beede at his word and did not take further action. Beede testified at his deposition that when Garnham asked him if there was a spill, he "may have said no" because he "didn't think it was a big deal."

Plaintiff Mireles testified that he spoke with Garnham in the middle of February 2014 and asked Garnham if Beede had poured mercury down the shop sink. According to Mireles, Garnham responded that "he better not have." According to Williams, in March 2014, he spoke with a friend who was a hazardous waste specialist. Williams's friend informed Williams that mercury was "very, very dangerous" and that Williams should report the spill to governmental safety agencies. Williams subsequently initiated a union meeting, where Williams and Morris decided to confront defendants about the mercury and asbestos in the plant.

Morris testified that she called defendant Sneathen and Human Resources Director Shelli Neumann and, at a meeting that same day, she told Sneathen and Neumann that there had been a mercury spill. Morris testified that "they both seemed like they hadn't heard anything about it" and that "[t]hey both responded like they didn't know." Williams testified that the health department arrived during the meeting and found mercury in the shop. Sneathen and Neumann decided to place Garnham and Beede on administrative leave, and Neumann testified that she began immediately investigating the incident.

On April 15, 2014, the Ingham County Bureau of Environmental Health informed Sneathen that "[w]e did not find mercury vapor concentrations above [MIOSHA[1]] regulations for worker protection." The bureau removed the manometer and vacuumed up visible beads of mercury. The city was ultimately cited for not properly disposing of the mercury.

Plaintiffs filed a complaint, alleging in pertinent part one count of intentional tort. Plaintiffs alleged that defendants intentionally and continuously exposed plaintiffs to asbestos and failed to warn plaintiffs of the asbestos in the plant. Plaintiffs also alleged that various workers were exposed to mercury, which was not properly cleaned up. Plaintiffs claimed that, as a result, defendants had intentionally exposed workers to asbestos and mercury, with actual knowledge of the dangers of such exposure and with reckless disregard for plaintiffs' health and safety.

Defendants moved for summary disposition under MCR 2.116(C)(4), (7), (8), and (10). Defendants alleged that the WDCA's exclusive remedy provision, MCL 418.131(1), barred plaintiffs' claims because plaintiffs had not demonstrated an intentional tort as an exception to that provision. Defendants argued that there was no evidence that they deliberately acted or failed to act with actual knowledge of specific risks, or with the purpose of injuring plaintiffs. Defendants also alleged that plaintiffs' claims were barred by governmental immunity and because plaintiffs had not established existing injuries. The trial court denied defendants' motion on all grounds. Specifically, the court denied East Lansing's motion for summary disposition on the ground that the public building exception barred the city's claim of governmental immunity, and the individual defendants' motion for summary disposition on the ground that the WDCA's exclusive remedy provision did not bar plaintiffs' claims.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A claim regarding the WDCA's exclusive remedy provision "necessarily constitutes a challenge to the trial court's subject matter jurisdiction over the claim." *Harris v Vernier*, 242 Mich App 306, 313; 617 NW2d 764 (2000). A party may move for summary disposition under MCR 2.116(C)(4) if "[t]he court lacks jurisdiction of the subject matter." When considering a motion under MCR 2.116(C)(4), the trial court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there is no genuine issue of material fact regarding the trial court's jurisdiction. *Cork v Applebee's of Mich, Inc*, 239 Mich App 311, 315; 608 NW2d 62 (2000). A genuine issue of material fact exists if reasonable minds could differ on the issue. *Johnson v Detroit Edison Co*, 288 Mich App 688, 695; 795 NW2d 161 (2010).

---

[1] The Michigan Occupational Safety and Health Administration.

Whether an intentional tort exists under the WDCA is a question of law. MCL 418.131(1). This Court reviews de novo questions of law. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 735; 614 NW2d 607 (2000).

## III. ANALYSIS

Defendants argue that the trial court erred by denying summary disposition on the ground that the WDCA's exclusive remedy provision barred plaintiffs' claims. We agree.

The right to the recovery of benefits under the WDCA is the exclusive remedy for employees against an employer for work-related injuries or occupational disease. MCL 418.131(1); *Johnson*, 288 Mich App at 695-696. The sole exception to this provision allows recovery if the employee can prove that the employer committed an intentional tort. MCL 418.131(1); *Johnson*, 288 Mich App at 696.

"For purposes of the WDCA, an 'intentional tort' is not a true intentional tort." *Bagby v Detroit Edison Co.*, 308 Mich App 488, 491; 865 NW2d 59 (2014), citing *Travis v Dreis & Krump Mfg. Co.*, 453 Mich 149, 168; 551 NW2d 132 (1996) (opinion by Boyle, J.). Rather, the pertinent statute creates a "rigorous threshold for a claim of intentional tort." *Travis*, 453 Mich at 180. MCL 418.131(1) provides in relevant part:

> An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

Thus, to avoid the WDCA's exclusive remedy provision, employees must present evidence that their employer undertook a deliberate act with the specific intent that an injury would result. *Travis*, 453 Mich at 169-172 (opinion by BOYLE, J.). A "deliberate act" may be one of commission or omission. *Id*. at 169-170. Employees may prove an employer's specific intent to injure with direct evidence or with circumstantial evidence. *Bagby*, 308 Mich App at 491. Absent direct evidence of an employer's intent to injure, employees may prove intent by showing that "the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." MCL 418.131(1). In other words, to prove an intentional tort under the WDCA, "a plaintiff must show that 'an employer . . . made a conscious choice to injure an employee and . . . deliberately acted or failed to act in furtherance of that intent.' " *Bagby*, 308 Mich App at 491, quoting *Travis*, 453 Mich at 180 (opinion by BOYLE, J.).

"Constructive, implied, or imputed knowledge" does not satisfy the WDCA's knowledge requirement; an employer's knowledge must be actual. *Travis*, 453 Mich at 173; *Bagby*, 308 Mich App at 492; *Johnson*, 288 Mich App at 697. Further, employees cannot prove an intentional tort under the WDCA merely by showing that the employer had actual knowledge of a dangerous condition or that a dangerous condition was likely to cause injury. *Bagby*, 308 Mich App at 492-493. Rather, employees must show that the employer had actual knowledge that "an injury was *certain* to occur and willfully disregarded that knowledge." MCL 418.131(1) (emphasis added). "Certain to occur" sets forth a very high standard that is met where there is no

doubt that injury will occur. *Travis*, 453 Mich at 173 ("When an injury is 'certain' to occur, no doubt exists with regard to whether it will occur."). To show that an employer "willfully disregarded" actual knowledge that injury was certain to occur, employees must show that the employer's act or failure to act was more than mere negligence. *Travis*, 453 Mich at 179. Thus, "[a]n employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur." *Id*. "In the case of a corporate employer, a plaintiff need only show that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do. *Johnson*, 288 Mich App at 697 (quotation marks and citation omitted).

The WDCA sets a high bar for plaintiffs to hurdle when seeking to establish that their employer committed an intentional tort. Because plaintiffs do not clear that bar, defendants are entitled to summary disposition pursuant to MCR 2.116(C)(4).

With regard to defendant East Lansing, it is undisputed that the managers and supervisors who received Fibertec's 2007 asbestos survey and resulting report neither shared the report with employees nor acted on the report's recommendations. Fibertec derived its "recommendations" from the relevant standards adopted by the federal government and incorporated by reference into the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq*., and the record shows that East Lansing's failure to act on them rightly resulted in the appropriate citations and fines. However, the fact that authorities cited and fined East Lansing for health and safety violations relative to its handling of asbestos-containing materials is not evidence that East Lansing, through its managers and supervisors, deliberately acted with specific intent to injure or with actual knowledge that injury was certain to occur. Deposition testimony from Peterson and from Michael Asher, the plaint's maintenance supervisor from 2006 to 2009, indicates an awareness of the general hazards of friable asbestos and an understanding that abatements were unnecessary where the asbestos was undisturbed. Nothing in the record suggests that the managers and supervisors involved did not share the Fibertec study with employees or adopt its recommendations with actual knowledge that injury was certain to occur.

The same is true with regard to the individual defendants. Even if we assume for the sake of argument that Beede, Garnham, and Sneathen knew that insulation in the steam pipe tunnels contained asbestos, no evidence indicates that they had actual knowledge that injury was certain to occur from exposure to the asbestos-containing material. The evidence shows that all three knew that friable asbestos could be harmful and that Sneathen knew that, with "extremely long-term exposure at extremely high-levels," there was a risk of cancer. However, the individual defendants' knowledge of the general hazards of asbestos or even that exposure to friable asbestos can result in injury is insufficient to prove intent under the WDCA. *Bagby*, 308 Mich App at 492-493; see also *Herman v City of Detroit*, 261 Mich App 141, 149; 680 NW2d 71 (2004) ("An employer's knowledge of general risks is insufficient to establish an intentional tort."). Moreover, it is worth noting that Fibertec collected and analyzed clearance air samples in the tunnel following discovery of the asbestos-containing insulation debris on the floor of the tunnel and found the airborne fiber concentration below state imposed levels.

This case is similar to *Agee v Ford Motor Co*, 208 Mich App 363; 528 NW2d 768 (1995). The plaintiffs in *Agee* "claim[ed] damages from alleged exposure to asbestos during the manufacturing processes at a Ford plant." *Agee*, 208 Mich App at 364. They alleged in their

complaint "that defendant had actual knowledge that injury was certain to occur because asbestos dust and fibers were allowed to circulate throughout defendant's plant . . . ." *Id*. at 366. They further alleged "that defendant knew that asbestos exposure would lead to certain injury to at least some of its employees." *Id*. In support of these allegations, the plaintiffs proffered testimony from an expert "that injury was certain to occur to about one-third of the employees at defendant's plant as a result of asbestos exposure." *Id*. Defendant moved for summary disposition of plaintiffs' complaint under MCR 2.116(C)(4), (7), (8), and raised MCR 2.116(C)(10) as an additional ground for summary disposition. After the trial court denied the motion on all grounds, defendant appealed.

On appeal, this Court held plaintiffs' allegation of intentional tort insufficient to circumvent the exclusive remedy provision of the WDCA. As the Court explained, plaintiffs failed to offer proof that defendant had " 'actual knowledge' that injury was certain to occur to any of its employees, let alone one-third of them. The complaint essentially alleges only that defendant had knowledge that asbestos posed health hazards and that its ventilation system exposed its employees to those hazards." *Id*. at 366-367. Our decision in *Agee* controls resolution of the asbestos claims in the case at bar. Plaintiffs' general allegations that defendants knew that asbestos posed health hazards to its employees and knew that it was exposing plaintiffs to those hazards does not constitute an allegation of intentional tort sufficient to avoid application of the WDCA's exclusive remedy provision.[2]

Plaintiffs argue on appeal that an employer should be deemed to have intended an injury when the employer had actual knowledge of a dangerous condition and willfully disregarded that knowledge. This is an incorrect statement of the law governing this case. As we explained above, establishing an intentional tort under the WDCA requires employees to show that their employer " 'made a conscious choice to injure an employee and . . . deliberately acted or failed to act in furtherance of that intent.' " *Bagby*, 308 Mich App at 491, quoting *Travis*, 453 Mich at 180 (opinion by Boyle, J.). The element of intent is a high hurdle that plaintiffs simply fail to clear. Plaintiffs establish that defendants elected not to act on their knowledge that the WWTP housed asbestos-containing materials. However, they present no evidence that defendants acted or failed to act with actual knowledge that injury was certain to occur or that they created a continuously operative dangerous condition that they knew would result in injury. See *Travis*, 453 Mich at 178 (indicating that a factfinder may conclude that an employer had knowledge that an injury was certain to occur if the employer "subjects an employee to a continuously operative dangerous condition that it knows will cause an injury, yet refrains from informing the employee about the condition").

With regard to the mercury spill, plaintiffs failed both to plead in avoidance of the WDCA's exclusive remedy provision and to present evidence establishing a genuine issue of

---

[2] Notably, unlike in *Agee*, where the defendant's internal memoranda established that some of the pertinent air samples taken at the plant "exceeded the regulatory limits for asbestos, indicating a health risk for employees[,]" *Agee*, 208 Mich App at 367, the record here shows that the asbestos levels at the WWTP did not exceed the regulatory safety limits for asbestos.

material fact regarding whether a supervisory or managerial employee actually knew that an injury was certain to follow from Beede's act of spilling mercury. Accordingly, defendants are entitled to summary disposition pursuant to MCR 2.116(C)(4) and (8).

Plaintiffs alleged in their amended complaint that defendants did not inform employees or the proper authorities about Beede's mercury spill and that in-house clean-up efforts were inadequate and put employees at further risk. Based on these alleged facts, plaintiffs contended that defendants exposed employees to mercury in reckless disregard of their actual knowledge of the significant dangers of exposure to mercury. As previously indicated, however, evidence that an employer had actual knowledge of a dangerous condition that was likely to cause injury is insufficient to plead or prove an intentional tort under the WDCA. *Bagby*, 308 Mich App at 492-493; *Agee*, 208 Mich App at 366-367. Nothing in plaintiffs' factual allegations gives rise to a reasonable inference that defendants deliberately acted with intent to cause injury.

In addition, plaintiffs fail to present evidence that creates a genuine issue of material fact regarding whether defendants deliberately exposed plaintiffs to mercury with the intent to injure. Beede, who spilled the mercury out of the manometer, did not believe the mercury was dangerous and told employees that he used to play with it as a child. The fact that Williams found Beede sitting on a bench in the maintenance shop with a basketball-sized spill of mercury at his feet further indicates that Beede did not believe that injury was certain to occur from any continuously operative dangerous condition arising from the mercury spill. See *Travis*, 453 Mich at 182-183 (observing that a supervisor's willingness to operate an intermittently malfunctioning machine is evidence that injury was not certain to occur). Garnham knew that mercury was an environmental pollutant, but when she asked Beede if he had spilled mercury, Beede responded negatively. Considering that two employees had informed her that Beede had indeed spilled mercury, Garnham could have, and perhaps should have, done more by way of investigation. Nevertheless, even if she had investigated further, nothing in the record indicates that she had sufficient knowledge of mercury to know that a spill could, let alone would, cause injury to employees. She had never received any training on mercury (or asbestos), and the record suggests that she focused her concern on whether mercury had been poured down the maintenance room sink and released into the wastewater system in the plant. Morris testified that both Sneathen and Neumann appeared surprised to learn of the mercury spill, indicating that neither Sneathen nor Neumann previously had knowledge of the spill, let alone an intent to injure.

It is admittedly stunning that a maintenance supervisor and a plant superintendent would be so uninformed about how to handle the hazardous materials around which they and their employees work. As was the case with the WWTP's statutory violations involving asbestos-containing material, authorities rightly cited and fined East Lansing for not having in place an emergency plan to handle such spills, not informing employees of the spill, and not properly cleaning the spill. Nevertheless, no record evidence indicates, nor did plaintiffs allege in their complaint, that defendant East Lansing or the individual defendants subjected plaintiffs to a continuously dangerous operative condition that they knew would cause injury and from which a factfinder could infer the intent to injure necessary to establish the intentional tort exception to the WDCA's exclusive remedy provision. See *Travis*, 453 Mich 178.

Based on the foregoing, we conclude that plaintiffs did not establish a genuine issue of material fact regarding application of the intentional tort exception to the WDCA's exclusive remedy provision. Therefore, the trial court did not have subject-matter jurisdiction over plaintiffs' claims. Accordingly, we do not reach the remainder of defendants' issues on appeal. We reverse the trial court's order and remand for entry of summary disposition in favor of defendants.

Reversed and remanded for entry of summary disposition in favor of defendants. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering