*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAUNTANIQUE BROWN, Personal
Representative of the ESTATE OF LORRAINE
FAISON,

UNPUBLISHED
September 22, 2022

Plaintiff-Appellant,

v

No. 357119
Wayne Circuit Court
LC No. 20-011978-NO

BURLINGTON COAT FACTORY OF TEXAS,
INC., and BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION, doing business as
BURLINGTON COAT FACTORY,

Defendants-Appellees.

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

BORRELLO J. (*concurring in part and dissenting in part*).

## I. BACKGROUND

Aa stated by my colleagues in the majority, plaintiff initiated this action alleging that defendants were liable for the shooting death of Lorraine Faison, who was employed at a Burlington Coat Factory store in Taylor, Michigan and was shot at work by fellow employee Sandra Waller. Plaintiff, as personal representative of Faison's estate, alleged that on October 15, 2017, Waller and Faison were working together and "began to argue about the proper way to scan the aisles of the store." According to the complaint, the argument escalated and Faison alerted the assistant store manager, Nicole Good, who spoke to both Faison and Waller. Waller told Good that she and Faison had a similar argument about three months earlier. Good instructed Waller to return to work and move to another department away from Faison. Waller returned to work but allegedly "continued yelling at and engaging in otherwise belligerent behavior with Faison." Good sent both employees home for the day and "remained with Faison while Waller went to the back

-1-

of Defendants' store to punch out, intending to keep the two women separated and prevent further escalation of the altercation."

Plaintiff alleged that defendants scheduled decedent and Waller to work another shift together the following day, on October 16, 2017. During that shift, Waller resumed the argument with Faison. At some point, Waller pulled out a handgun and shot Faison in the chest, killing her.

In seeking to hold defendants liable for Faison's death, plaintiff alleged that "under Michigan law, specifically MCL 418.131(1), an employer can and will be liable to an employee when the employer commits a deliberate act with actual knowledge that an injury is certain to occur." Plaintiff asserted that "Defendants Burlington, through its supervisors, managers, and other agents, possessed actual knowledge that the workplace environment created by Waller was extremely dangerous such that injury was certain to occur to one or more of its employees, especially decedent Faison." Further, plaintiff claimed that "That Defendants Burlington allowed Waller to return to work immediately following an altercation with decedent Faison, and further allowed Waller to remain on the same shift as Faison, without any intervention or corrective measures, in willful disregard of the knowledge that an injury was certain to occur."

In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(8). Defendants argued that plaintiff failed to state a claim on which relief could be granted because plaintiff's complaint did not allege facts showing that defendant committed an intentional tort for purposes of this exception to the exclusive remedy provision of the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101, *et seq*. Defendants argued that plaintiff had not alleged any facts to show that defendants had *actual* knowledge that an injury was certain to occur as required to bring a claim within the intentional tort exception in MCL 418.131(1). According to defendants, plaintiff's complaint at most alleged that defendants could be imputed with constructive knowledge, which is insufficient to establish an intentional tort for purposes of MCL 418.131(1).

In response, plaintiff argued that she alleged facts demonstrating that defendants committed an intentional tort sufficient to satisfy the intentional tort exception to the exclusive remedy provision of the WDCA because the complaint alleged that Good, a supervisory employee, knew that Faison and Waller were involved in an argument the day before the shooting that ended in both employees being sent home and that these two employees had previously been involved in a similar argument. Plaintiff also relied on the allegations in the complaint that Good had tried to separate the employees before instructing them to go home and that Good remained with Faison while Waller prepared to leave the premises. Plaintiff contended that she only needed to show that defendants had knowledge that *an* injury was certain to occur, not that defendants knew that Faison would be shot or killed. Plaintiff argued that scheduling Faison and Waller to work together the next day without taking any corrective or preventative measures showed willful disregard for this knowledge. Plaintiff also requested permission to amend her complaint if the court was "not convinced the Complaint as currently written sufficiently states a claim under the intentional tort exception of the WDCA."

After a hearing on defendants' motion, the trial court granted defendants' motion for summary disposition and dismissed plaintiff's complaint. The trial court ruled that plaintiff had

not alleged an intentional tort against defendants for purposes of the WDCA, explaining its reasoning in pertinent part as follows:

> [W]hat we have here, even taking the evidence in a light most favorable to the nonmoving party, we have a situation where there was a disagreement between employees. Here, the -- the employer, there was no deliberate act on the part of the -- the -- the employer. All the supervisor did was, one, separated two individuals who had a disagreement on the floor, sent them home early, asked them to cool off. Then the next today, you know, the other woman comes back with a gun and shoots the other woman in the chest. You know, the employer had -- definitely had no -- did not specifically intend – intend an injury here. It's -- it's -- I don't know care how you shape it; the employer didn't. And whether or not they had actual knowledge that an injury was certain to occur, no way on God green -- God's green earth, when you have two people working together, do you think after they had a disagreement about stocking shelves and working together that the other would bring in a gun and shoot the other woman in the chest. That's just outside the realm of reasonableness and that which you would expect to occur and that which the employee would intend to occur in a workplace situation.

## II. STANDARD OF REVIEW

My colleagues have correctly and aptly stated the proper standard of review employed in such cases. However, it is my contention that the majority employs a (C)(10)[1] analysis to a (C)(8) motion, despite our Supreme Court's direction in *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) that "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." (emphasis added). "A motion under MCR 2.116(C)(8) may only be granted when a claim *is so clearly unenforceable that no factual development could possibly justify recovery*."(emphasis added). *El-Khalil*, 504 Mich at 160. This Court has previously explained the well-established principles applicable to reviewing a motion under MCR 2.116(C)(8):

> Well-established principles guide our review. A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . ." MCR 2.111(B)(1). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." Our Supreme Court has characterized MCR 2.111(B)(1) as consistent with a "notice pleading environment . . . ." If a party fails to plead facts with sufficient detail, the court should permit "the filing of an amended complaint setting forth plaintiff's claims

---

[1] MCR 2.116(C)(10).

in more specific detail." [*Dalley*, 287 Mich App at 305-306 (some citations omitted; ellipses and alterations in original).]

In the context of the intentional tort exception to the exclusive remedy provision of the WDCA, "the issue whether the facts alleged by plaintiff are sufficient to constitute an intentional tort is a question of law for the trial court, while the issue whether the facts are as plaintiff alleges is a jury question." *Gray v Morley*, 460 Mich 738, 742-743; 596 NW2d 922 (1999). Questions of law are reviewed de novo. See *Carter v Ann Arbor City Attorney*, 271 Mich App 425, 427, 438; 722 NW2d 243 (2006).

In general, employees who sustain work-related injuries are limited to the benefits provided by the WDCA as their sole remedy for recovering from their employers unless the employee can demonstrate that the employer committed an intentional tort as that term is defined under the WDCA. *Bagby v Detroit Edison Co*, 308 Mich App 488, 491; 865 NW2d 59 (2014). MCL 418.131(1) provides:

(1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

Accordingly, for purposes of the intentional tort exception under the WDCA, the statutory definition of "intentional tort" controls and the question is not whether a "true" intentional tort was committed. *Bagby*, 308 Mich App at 491. "[T]o recover under the intentional tort exception of the WDCA, a plaintiff must prove that his or her injury was the result of the employer's deliberate act or omission and that the employer specifically intended an injury." *Id*. Specific intent may be shown by "direct evidence that the employer had the particular purpose of inflicting an injury upon his employee." *Id*. (quotation marks and citation omitted). Alternatively, "the specific intent element may be satisfied in the absence of direct evidence if the plaintiff can show that the employer had actual knowledge that an injury is certain to occur, yet disregards that knowledge." *Johnson v Detroit Edison Co*, 288 Mich App 688, 697; 795 NW2d 161 (2010) (quotation marks and citation omitted).

Here, plaintiff claims that defendants, through Good, had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. "In the case of a corporate employer, a plaintiff *need only show that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do.*" *Id*. (quotation marks and citation omitted). Plaintiff alleged in the complaint that on the day before the shooting, Good spoke to Waller and Faison after being informed that they were having an argument. During this conversation, Waller allegedly told Good about a previous argument between Waller and Faison that occurred approximately three months earlier. Plaintiff further alleged that Good separated Waller and Faison by instructing them to work in different

-4-

departments, that Good told both employees to go home after Waller "continued yelling at and engaging in otherwise belligerent behavior with Faison," and that Good "remained with Faison while Waller went to the back of Defendants' store to punch out, intending to keep the two women separated and prevent further escalation of the altercation." According to the complaint, defendants allowed Waller and Faison to return to work the next day, as scheduled, to work on the same shift without implementing any other corrective or preventive measures. During that shift, Waller allegedly resumed the argument and eventually shot Faison.

Again, where I part company in the majority's analysis is that my review, and accepting plaintiff's factual allegations as true and construing them in a light most favorable to plaintiff as the nonmoving party, *Dalley*, 287 Mich App at 304-305, leads me to conclude that it could reasonably be inferred that Good had actual knowledge that Waller was creating a harmful environment under which injury was certain to occur and that Good willfully disregarded that knowledge by allowing Waller and Faison to work together the next morning as scheduled without first taking any additional precautions. See MCL 418.131(1); *Johnson*, 288 Mich App at 697 (stating that MCL 418.131(1) permits "liability when direct evidence of an intentional tort is unavailable, but could be inferred from the surrounding circumstances"). We recognize that "[c]onstructive, implied, or imputed knowledge does not satisfy [the] actual knowledge requirement." *Bagby*, 308 Mich App at 492. However, and contrary to the assertions of the majority, plaintiff has not merely alleged that Good should have known that injury was certain to occur. Viewed in a light most favorable to plaintiff, the allegations that the argument escalated to such a degree of severity that Good decided to send both Waller and Faison home for the day, along with Good's alleged decision to remain with Faison while Good prepared to leave the premises and Good's alleged knowledge of the previous argument, support an inference that Good had actual knowledge rather than only constructive knowledge. *Id*.

Additionally, contrary to the assertions of the majority and defendant, plaintiff does not have to show that Good specifically knew that Waller would shoot Faison. See *Johnson*, 288 Mich App at 699 (explaining that MCL 418.131(1) does not require the plaintiff to "show that defendants had actual knowledge that plaintiff[] in particular would be injured in a specific way on a certain date"). Furthermore, although Waller and Faison allegedly had an argument three months earlier that apparently did not result in any injury, that does not negate a conclusion that Good actually knew that injury was certain to occur following the more recent argument. See *id*. at 701 ("The absence of a previous serious injury, or even the absence of previous minor ones, does not necessarily eliminate certainty that an injury will occur.").

Again, for me, this case turns on the court rule under which defendants brought their motion to dismiss. With this in mind, I would conclude that plaintiff satisfied the requirements of notice pleading for sufficiently stating a claim on which relief may be granted. *Dalley*, 287 Mich App at 305-306. The trial court thus erred by granting summary disposition because the claim was not "so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160. "If sufficient facts are alleged, then whether the facts are true, and other questions of credibility and the weight of the evidence, become questions for the jury to decide." *Johnson*, 288 Mich App at 696. Here, the trial court erred as a matter of law by improperly weighing the credibility and relative strength of plaintiff's allegations in deciding that there was no intentional tort for purposes of MCL 418.131(1) and that the action should be dismissed under MCR 2.116(C)(8). See *Gray*, 460 Mich at 742-743; *Johnson*, 288 Mich App at 696. The relative

strength of plaintiff's evidence is not a proper consideration for deciding a motion under MCL 2.116(C)(8) and although plaintiff will need to factually support the allegations, it was premature to dismiss the action at this stage. *El-Khalil*, 504 Mich at 162-164. Accordingly, I would vacate the trial court's ruling and remand.

Though I believe it unnecessary to reach the issue, I concur with my colleagues to allow plaintiff to amend their complaint for the reasons stated in their opinion.

/s/ Stephen L. Borrello